UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OLIVER MARTINEZ VIDALON,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-2841-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this verified 28 U.S.C. § 2241 habeas petition, asserting that his June 29, 2026, redetention, after having been previously released into the United States in 2023, violated his due process rights under the Fifth Amendment. *See generally* Dkt. 1. Respondents filed a return (Dkt. 5), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard (Dkt. 6) and their counsel Lawrence Van Daley (Dkt. 7). Petitioner filed a traverse in reply (Dkt. 8).

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of Peru, who entered the United States with his wife and son on March 9, 2023. Hubbard Decl., ¶ 3. He was encountered by border patrol and taken into custody on a Warrant for Arrest of [Noncitizen]. *Id.* He was released the next day on an Order of Release on Recognizance ("OREC") issued "[i]n accordance with section 236 of the Immigration and Nationality Act[.]" *Id.* ¶ 4; *see* Van Daley Decl., ¶ 2, Ex. 5. ICE also served Petitioner with a Notice to Appear ("NTA") charging him with inadmissibility under the INA. Hubbard Decl., ¶ 5.

While released, Petitioner "thereafter resided in the community while pursuing immigration relief." Dkt. 1, ¶ 30. He lived in the Helena, Montana area and "openly work[ed] in the community." *Id.* ¶ 42.

On June 23, 2023, Petitioner was arrested for "Partner or Family Member Assault, Causing Bodily Injury to Partner or Family Member – 1st Offense." Hubbard Decl., ¶ 6. Petitioner pled guilty on November 8, 2023, and received a deferred sentence, a fine, and an order to complete anger management counseling. *Id*; *see* Van Daley Decl., ¶ 2, Ex. 4 (sentencing order). Petitioner asserts he complied with the requirements of his sentence and continued pursuing his immigration case. Dkt. 1, ¶ 37. Petitioner filed for asylum on May 28, 2024. *Id.* ¶ 4; Van Daley Decl., ¶ 2, Ex. 2 at 3. It is unclear from the record whether Respondents took any action related to Petitioner's conviction at any point leading up to his instant detention.

On June 29, 2026, DHS Enforcement and Removal Operations ("ERO") arrested Petitioner during an "ICE at-large fugitive operation in Bozeman, Montana." Hubbard Decl., ¶ 8. Officer Hubbard asserts that Petitioner "was in violation of [his] OREC due to his criminal conviction in 2023, and he was not in possession of valid immigration documents allowing him

to be or remain in the United States." *Id.* ¶ 8. The I-213 arrest report completed on June 30, 2026, however, says nothing of Petitioner's OREC compliance, incorrectly asserts Petitioner was criminally charged on June 4, 2024, and that the charge remained pending. *See* Van Daley Decl., ¶ 2, Ex. 2 at 1-4. It thus appears ICE agents arrested Petitioner on June 29, 2026, solely based on his lack of "valid immigration documents allowing him to be or remain in the United States legally." *Id.* at 3. Petitioner was transferred to the NWIPC on July 2, 2026. Hubbard Decl., ¶ 9.

On July 23, 2026, an immigration judge in Tacoma ordered Petitioner removed from the United States. *Id.* ¶ 11. Petitioner was transferred to the Florence, Arizona Service Processing Center to be removed on July 28, 2026. *Id.* ¶ 12. Prior to effectuating Petitioner's removal, however, ERO was informed that the Tacoma immigration judge vacated the July 23, 2026, removal order because it was "issued in error." *Id.* ¶ 13. Petitioner was transferred back to the NWIPC and remains in pending removal proceedings with a merits hearing scheduled for September 10, 2026. *Id.* ¶¶ 14, 17.

On August 10, 2026, Petitioner filed the instant petition. Dkt. 1.

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

//

//

## III. DISCUSSION

Petitioner's claim is that, under *Mathews v. Eldridge*, 424 U.S. 319 (1976), Respondents violated his due process rights when they redetained him on June 29, 2026, without first providing notice and an opportunity to be heard. Dkt. 1, ¶¶ 45-56. He seeks release from detention or a bond hearing in the alternative. *Id.* at 14-15. Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), but recognize courts in this District consistently find noncitizens previously released under circumstances similar to Petitioner's to be detained under § 1226(a). *See* Dkt. 5 at 3-4 (and the Western District cases cited therein). Respondents assert that, whether detained under §§ 1225(b) or 1226(a), Petitioner's redetention satisfied due process. *Id.* at 7-12.

### A. Statutory Detention Authority

Despite acknowledging District authority rejecting their position, Respondents maintain that Petitioner remains subject to detention under 8 U.S.C. § 1225(b) as an applicant for admission because he was "processed near the border shortly after unlawful entry." Dkt. 5 at 7 (citations omitted). Respondents assert that, because Petitioner "was initially encountered and processed near the border as a recent entrant," Petitioner's "original classification" under § 1225(b) remains despite being "released on an OREC shortly thereafter." Dkt. 5 at 7. Thus, in essence, Respondents' interpretation of the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), is that § 1225(b) applies to Petitioner because he was initially encountered and detained at the border in 2023, rather than initially encountered and detained within the interior of the United States like the petitioners in *Rodriguez Vazquez*. *See id.*

This argument has been rejected by Courts in this District and nothing in Respondents' briefing compels a different result. *See Francisco Rodas v. Scott*, No. C26-2840-MLP, 2026 WL 2620255, at *3-5 (W.D. Wash. Sept. 4, 2026); *Briones Montenegro v. Warden/Facility Adm'r, Northwest Processing Ctr.*, No. C26-2743-LK, 2026 WL 2607491, at *3-4 (W.D. Wash. Sept. 3, 2026); *Ortiz-Canales v. Blanche*, C26-2748-DGE, 2026 WL 2561542, at *2 n.4 (W.D. Wash. Aug. 31, 2026). *See also Torres v. Barr*, 976 F.3d 918, 926 (9th Cir. 2020) (rejecting the government's theory that the time of an application for admission "continues, potentially for years or decades"); *Rodriguez Vazquez*, 183 F.4th at 1178 (rejecting the government's theory that a noncitizen "present in the interior of the United States remains in the perpetual state of seeking admission").

It is clear Petitioner was not "entering" the United States at the time he was redetained. Rather, ICE encountered Petitioner in Bozeman, Montana after he had spent the last several years living inside the United States and subject to pending removal proceedings. *See* Hubbard Decl., ¶¶ 4, 8. Petitioner was "already in the country" and therefore subject to detention under § 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

The Court further observes that Petitioner's 2023 OREC was expressly issued in accordance with Section 236 of the INA, which is codified at 8 U.S.C. § 1226. Van Daley Decl., ¶ 2, Ex. 5. Respondents suggest Petitioner's 2023 OREC should not "permanently determine" his statutory classification today, Dkt. 5 at 4, but do not explain why it would be appropriate for the Court to accept their theory yet ignore any evidence that might undermine it.

Here, nothing about DHS's treatment of Petitioner leads the Court to find Petitioner was ever subject to mandatory detention under § 1225(b) that could ostensibly continue governing his detention today. And when the government historically treats a noncitizen as subject to

discretionary detention under § 1226, rather than the mandatory scheme under 1225(b), the "former is more likely to apply." *See Bello Chacon v. Hermosillo*, No. C25-2299-TMC, 2025 WL 3562666 at *2 (W.D. Wash. Dec. 12, 2025) (citation omitted).

Finally, Respondents' most recent warrant served on Petitioner was issued under the authority of § 1226. *See* Van Daley Decl., ¶ 2, Ex. 3 at 2. *See also Rodriguez Vazquez*, 183 F.4th at 1172-73 (acknowledging the fact that "Section 1226(a) permits (but does not require) the government upon a warrant to arrest and detain '[a noncitizen] . . . pending a decision on whether the [noncitizen] is to be removed from the United States[]" shows they are at least facially subject to detention under 8 U.S.C. § 1226(a)).

For these reasons, the Court finds Petitioner's detention falls squarely under § 1226(a).

**B. *Mathews* and Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). As noted, Respondents acknowledge the applicability of *Mathews*, but reach the conclusion opposite of Petitioner—that due process did not require pre-deprivation notice or a hearing. Dkt. 5 at 7-11.

1. *Petitioner had a liberty interest in remaining free.*

Respondents concede that Petitioner had a liberty interest in remaining free and that the first factor weighs in his favor. Dkt. 5 at 8-9. When Petitioner was released into the United States on an OREC in 2023, he took with him a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). The fact that he was subject to conditions of release "does not eliminate the protections afforded" to that interest. *E.A. T.-B.*, 795 F. Supp. 3d at 1321-22. The Court therefore agrees with Respondents that the first *Mathews* factor favors Petitioner.

2. *There was a high risk of erroneous deprivation.*

As for the second *Mathews* factor, the Court finds there was a high risk of erroneous deprivation when Petitioner, having been released to live in the United States, was redetained without notice or an opportunity to be heard and without the Government first considering whether he posed a risk of absconding or a danger to the community. Respondents contend the risk was low because Petitioner had been convicted of a crime, which they contend "directly violated the explicit conditions of [his] OREC[.]" Dkt. 5 at 9.

When the Government released Petitioner on an OREC in 2023, the issuing officer must have first necessarily found that his release "would not [have] pose[d] a danger to property or

persons, and that [he was] likely to appear for any future proceeding." *See* 8 C.F.R. 236.1(c)(8). The unilateral decision to then revoke that release without first reconsidering flight risk or danger comes with a high risk of erroneous deprivation. *See, e.g., E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases). To the extent any of this process occurred, evidence of that process is not before the Court.

The Court reiterates that ICE agents did not arrest and redetain Petitioner based on his conviction. *See* Van Daley Decl., ¶ 2, Ex. 2 at 3. Instead, ICE arrested and redetained Petitioner because of his unlawful presence in the United States without possessing valid entry documents, *see id.* at 3-4—a fact the Government certainly knew at the time DHS released him to live in the United States in 2023. While Respondents' post-hoc justification here may provide some support for DHS to seek Petitioner's redetention, the *Mathews* analysis is focused on the processed afforded at the time the interest was impacted by the government. *Mathews*, 424 U.S. at 335. Providing notice and a pre-deprivation hearing would have provided an opportunity for Petitioner to challenge the factual bases for his redetention. This factor weighs in favor of Petitioner.

3. *The Government's interest did not justify forgoing pre-deprivation process.*

Finally, the Government's interest in redetaining Petitioner without notice or an opportunity to be heard was low. The Government certainly has an interest in immigration enforcement, which includes, for example, ensuring noncitizens appear at future proceedings, protecting the public from dangerous noncitizens, prompt execution of removal orders, and preventing noncitizens from "remaining in the United States in violation of our law." *Demore v. Kim*, 538 U.S. 510, 518 (2003); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). Respondents contend that, as it relates to Petitioner, allowing him to "remain at large"

would have "undermine[d] the integrity of the conditional-release system, increase[] the risk of further harm to the community, and impair[] the government's ability to effectuate removal." Dkt. 5 at 10.

As noted, however, it does not appear DHS knew of Petitioner's conviction on the day he was redetained by ICE. Petitioner had pled guilty over two and a half years prior to his redetention and appears to have satisfied the requirements of his sentence. Hubbard Decl., ¶ 6; Dkt. 1, ¶¶ 7-8. Respondents do not explain why Petitioner's 2023 conviction evidences a risk of further harm to the community or why it necessitated forgoing pre-deprivation process on June 29, 2026—particularly given that ICE appeared unaware of the conviction. Accordingly, the Court cannot conclude that providing pre-deprivation notice and an opportunity to respond would have undermined any asserted governmental interest such that excusing any pre-deprivation process was justified.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

Respondents contend that, should the Court grant relief, the appropriate remedy is a bond hearing. *See* Dkt. 5 at 11-12 (and the cases cited therein). The cases relied upon by Respondents are distinguishable. The petitioners in *Maliwat v. Scott*, 2026 WL 2256711 (W.D. Wash. Aug. 7, 2025), *Dovlatov v. Hernandez*, 2026 WL 1030454 (W.D. Wash. Apr. 16, 2026), and *Hong v.*

*Mayorkas*, 2022 WL 1078627 (W.D. Wash. Apr. 11, 2022), challenged their prolonged detentions under § 1225(b). The petitioners in *Juarez v. Wolf*, 2021 WL 2322823 (W.D. Wash. June 7, 2021), *Pasillas v. ICE Field Off. Dir.*, 2021 WL 8084206 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted,* 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022), and *Populus-Revuelta v. Scott*, 2026 WL 1067317 (W.D. Wash. Apr. 20, 2026), were detained under § 1226(c), a statute not at issue here. The petitioner in *Balwan* challenged his detention without a bond hearing as violative of § 1226(a). *Balwan v. Bondi*, 2026 WL 497098, at *3 (W.D. Wash. Feb. 23, 2026).

Those cases thus involve claims arising under the applicable statutory detention authority, § 1225(b), § 1226(a), or § 1226(c), rather than a Fifth Amendment due process challenge to the circumstances of the noncitizen's *redetention*. A post-deprivation hearing "occur[s] after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. -T.B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025). Accordingly, the Court finds that restoring Petitioner to the status held prior to the erroneous deprivation is the appropriate remedy.

**C. Remaining Claims and Injunctive Relief**

Petitioner also seeks to "[e]njoin Respondents from continuing to detain [him] absent constitutionally adequate procedures consistent with due process." Dkt. 1 at 14. To the extent Petitioner's request seeks relief beyond his release ordered below, Petitioner does not develop a factual record or provide legal authority to support the Court ordering either temporary or permanent injunctive relief. *See generally* Dkt. 1. His request is therefore denied.

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of his redetention. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining request for injunctive relief is DENIED. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 11th day of September, 2026.

S. KATE VAUGHAN
United States Magistrate Judge